IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LPP MORTGAGE LIMITED,

    Plaintiff,

    v.

J. GARDNER AND J. GARDNER CO., *et al.*,

    Defendants.

Civil No. 02-1331-AS

OPINION AND ORDER

ASHMANSKAS, Magistrate Judge:

Plaintiff is the assignee of two Small Business Administration ("SBA") loans, which are secured by property or personal guarantees of the defendants: (1) J. Gardner and J. Gardner Company; (2) James L. Gardner; (3) J. Keith Gardner; and (4) Carrol E. Gardner. Plaintiff has sued for default of the loans, foreclosure and replevin and seeks summary judgment on the ground that there is no issue of material fact that defendants are in default of their payment obligations under promissory notes, deeds of trust, guaranties and other loan documents. Currently before the court is plaintiff's summary judgment motion (docket No. 63).

## BACKGROUND

The SBA agreed to make two loans to defendant J. Gardner and J. Gardner Company (Gardner Company) for disaster relief in the wake of flooding in northwestern Oregon in February 1996. The Gardner Company's motel/RV park in Clatskanie, Oregon, had been flooded and

damaged.

One of the two loans was an Economic Injury Disaster Loan ("EIDL"), the purpose of which was to provide the Gardner Company with working capital to pay operating overhead while it tried to rehabilitate the property. The principal advanced under this loan was $102,000. The SBA advanced $663,100 under the second loan, a physical disaster business loan ("DLB"). Both loans were declared in default on March 1, 1998, and no payments have been made by any of the defendants since that date.

Plaintiff seeks a money judgment against the Gardner Company and the guarantors, James L. Gardner, J. Keith Gardner, and Carrol E. Gardner. Plaintiff also seeks judgments of foreclosure against real property collateral pledged by the defendants, specifically, the Clatskanie property mentioned above as well as two condominium units in Gresham, Oregon.

Defendants assert several affirmative defenses and counterclaims relating to the alleged failure of the SBA to give the consideration required by law to defendants' request for reinstatement of the loans.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Id. at 324. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts in the light most favorable to the non-moving party. Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving

1  party. Id. at 630-31. The Ninth Circuit, however, has stated, "[n]o longer can it be argued that any
2  disagreement about a material issue of fact precludes the use of summary judgment." Cal.
3  Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc., 818 F.2d 1466, 1468 (9th Cir.1987),
4  cert. denied, 484 U.S. 1006 (1988) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
5  U.S. 574 (1986)). When the non-moving party's claims are factually implausible, that party must
6  come forward with more persuasive evidence than would otherwise be required. Id.

FACTS

Because all material facts must be viewed in the light most favorable to the non-movant, the evidence is viewed in the light most favorable to defendants. A review of the parties' submissions, including affidavits, deposition excerpts and exhibits, reveals the following facts.[1]

On or about March 15, 1996, defendant Gardner Company agreed to borrow $23,000 from the SBA pursuant to loan number EIDL 91000930-02 ("Loan One"). Loan One is evidenced in part by a Loan Authorization and Agreement ("Loan One Agreement") and Promissory Note ("Note One"). Loan One has an interest rate of four percent. The terms of Loan One were subsequently modified to authorize borrowing up to $169,300, although the maximum principal amount advanced by the SBA under Loan One was $102,000. Plaintiff's Concise Statement of Material Facts ("Plaintiff's Facts"), ¶ 2; Defendants' Response to Plaintiff's Concise Statement of Material Facts in Support of Motion for Summary Judgment ("Defendants' Facts"), ¶ 1.

On or about April 1, 1996, the Gardner Company agreed to borrow $999,700 from the SBA pursuant to loan number DLB 91001030-03 ("Loan Two"). Loan Two is evidenced in part by a Loan Authorization and Agreement ("Loan Two Agreement") and Promissory Note ("Note Two"). Loan Two has an interest rate of four percent. The terms of Loan Two were subsequently modified to change the monthly payment amount and the maturity date. Plaintiff's Facts, ¶ 7; Defendants' Facts, ¶ 1.

---

[1] Citations to affidavits and depositions are identified by the last name of the affiant, or deponent, and citations are to the paragraph(s) of the affidavit, or to the page(s) or exhibit number(s) of the deposition.

Both the Loan One Agreement and the Loan Two Agreement provided:

> "DISBURSEMENT OF THE LOAN
>
> "A.    Disbursements will be made by and at the discretion of SBA Counsel, in accordance with the Loan Authorization and Agreement and the general requirements of SBA.
>
> . . . .
>
> "D.    Disbursements may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition . . . ."

Scott Aff., Ex. G, § 16, p. 6; Ex. Z, § 17, p. 7. The Loan One and Loan Two Agreements define adverse change as used in this section:

> "Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc."

Id. at § 13, p. 5; Ex. Z, § 14, p. 6.

On or about April 19, 1996, the Gardner Company executed deeds of trust encumbering property at 495 East Columbia River Highway, Clatskanie, Oregon, 97016 (the "Columbia County Property") to secure payment on Loan One and Loan Two. These deeds of trust (the "Loan One Columbia Deed of Trust" and the "Loan Two Columbia Deed of Trust") were recorded on April 22, 1996, as Instrument Nos. 04065 and 04064, respectively, in the Records of Columbia County, Oregon. The Loan One Columbia Deed of Trust was amended twice. Plaintiff's Facts, ¶¶ 3, 8; Defendants' Facts, ¶ 1.

On or about April 20, 1996, defendant James L. Gardner executed and delivered for the benefit of the SBA deeds of trust encumbering two condominiums located at 180 and 182 S.E. Kane Road, Gresham, Oregon (the "Multnomah County Property"). These deeds of trust (the "Loan One Multnomah Deed of Trust" and the "Loan Two Multnomah Deed of Trust") were recorded on April 22, 1996, as Recording Nos. 96059567 and 96059566, respectively, in the Records of Multnomah County, Oregon. Plaintiff's Facts, ¶¶ 4, 9; Defendants' Facts, ¶ 1.

Beginning on or about April 1, 1996, defendants James L. Gardner, J. Keith Gardner and Carroll E. Gardner each separately guaranteed unconditionally payment of all sums due to the SBA,

and its successors and assigns, under Loan One and Loan Two. Plaintiff's Facts, ¶¶ 6, 11; Defendants' Facts, ¶ 1.

By letters dated April 21, 1997, the SBA notified the Gardner Company that due to an adverse change, specifically, a money judgment against the Gardner Company and a judgment lien against properties securing the SBA loans, undisbursed loan funds were cancelled. Plaintiff's Facts, ¶ 12; Defendants' Facts, ¶ 1. Each letter provided:

> "We are in receipt of a money judgement [*sic*] filed with the Circuit Court of Oregon, Klamath County in the amount of $185,000 plus interest at 9% from March 10, 1997. Additionally, we have received notification from a title insurance company stating the plaintiff has placed a lien against properties securing you SBA disaster loan.
>
> "Due to this adverse change, your undisbursed loan funds have been cancelled."

Scott Aff., Exs. II and JJ. The letters also informed the Gardner Company how to notify the SBA if the Gardner Company wanted to request reinstatement of the undisbursed loan funds. At the time these letters were written, the SBA had disbursed $102,000 of principal on Loan One and $663,100 on Loan Two. Plaintiff's Facts, ¶ 12; Defendants' Facts, ¶ 1.

After the SBA stopped funding on the loans, defendants attempted to sell the Clatskanie property and other property to collateralize the loans in an attempt to mitigate their damages. Randall Aff., ¶ 37. Defendants presented the SBA will several qualified buyers, but the SBA refused to allow the sales of these properties. *Id.*

Between April 26, 1997, and December 1997, there was ongoing correspondence between the Gardner Company and the SBA concerning the Gardner Company's request to have the cancelled loan funds reinstated. By letter dated October 31, 1997, the Gardner Company's representative requested that the SBA consider subordinating its loans and collateral for Loan One and Loan Two to another lender. In early December 1997, the SBA agreed to subordinate its positions on Loan One and Loan Two and the collateral for those loans to an $800,000 loan by the Bank of Portland. SBA letters to the Gardner Company dated December 1, 1997, deferred the Gardner Company's next loan payments to March 1, 1998. Plaintiff's Facts, ¶ 13; Defendants' Facts, ¶ 1.

Page -5- OPINION AND ORDER *{ bl }*

The Gardner Company failed to make its March 1, 1998, payments under Loan One and Loan Two. By letter dated March 5, 1998, the SBA notified the Gardner Company that it was in default under Loan One and Loan Two and indicated that all amounts due under both loans were accelerated and immediately due. Plaintiff's Facts, ¶ 14; Defendants' Facts, ¶ 1.

Plaintiff LPP Mortgage Limited ("LPP"), a Texas Limited Partnership, is the assignee of the SBA with respect to Loan One and Loan Two. LPP purchased the loans, promissory notes and related documents from the SBA in connection with a sale of loans by the SBA on or about August 3, 2000. Plaintiff's Facts, ¶ 1; Defendants' Facts, ¶ 1.

LLP seeks money judgments against the Gardner Company and defendant/guarantors James L. Gardner, J. Keith Gardner, and Carrol E. Gardner. LPP also seeks judgments or foreclosure against the Multnomah County Property.

## DISCUSSION

The relationship between the parties is governed by their contract, the relevant provisions of which are set forth above. The SBA's contractual powers are consistent with the following statutory provisions:

> "(b) Disaster loans; authorization, scope, terms and conditions, etc.
>
> " . . . the [SBA] also is empowered to the extent and in such amounts as provided in advance in appropriate Acts –
>
> "(1)(A) to make such loans . . . <u>as the [SBA] may determine to be necessary or appropriate</u> to repair, rehabilitate or replace property, real or personal, damaged or destroyed by or as a result of natural or other disasters . . . ."

15 U.S.C. § 636(b)(1)(A) (emphasis supplied). Likewise, the SBA is empowered:

> "to make such loans . . . <u>as the [SBA] may determine to be necessary or appropriate</u> to any small business concern . . . located in an area affected by a disaster . . . ."

15 U.S.C. § 636(b)(2) (emphasis supplied). The Ninth Circuit has interpreted the same language in other statutes governing the SBA's authority under similar programs to mean that the SBA's decisions regarding whether to lend funds are committed to agency discretion and are not subject to judicial review, absent an abuse of that discretion. For example, in <u>Concrete Tie v. Liberty</u>

Page -6- OPINION AND ORDER                                     *{ bl }*

Construction the Ninth Circuit held that similar language in the set aside provisions of the Small Business Act, 15 U.S.C. § 637(a), committed the decision to award contracts to the SBA's discretion. 107 F.3d 1368, 1371 (9th Cir. 1997). The court considered the following language:

> "It shall be the duty of the [Small Business] Administration and it is hereby empowered, <u>whenever it determines such action is necessary and appropriate</u> . . . to arrange for the performance of . . . procurement contracts by negotiating or otherwise letting subcontracts to socially and economically disadvantaged small business concerns."

15 U.S.C. §637(a)(1)(B) (emphasis supplied). The Ninth Circuit rejected the borrower's argument that this statute created a "duty" to award subcontracts, finding that although the statute used the term "duty," it did not speak in mandatory language. Rather, the phrase "whenever it determines such action is necessary and appropriate," granted the SBA considerable discretion, thereby tempering any mandatory obligation. Concrete Tie, 107 F.3d at 1371.

Judicial review of the decisions of the SBA is governed by the Administrative Procedures Act ("APA"), meaning that the SBA's decision is not subject to judicial review unless it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C. §§ 701 *et seq.*; Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414 (1971); see also Gifford v. Small Bus. Admin., 626 F.2d 85, 86 (9th Cir. 1980) (affirming summary judgment in favor of the SBA, holding that the SBA's decision regarding how much to loan to borrowers and how much business assistance to provide are reviewable only under arbitrary and capricious standard).

In addition, the loan documents entered into between the parties articulate the exercise of SBA discretion: "Disbursements will be made by and at the discretion of SBA Counsel . . . Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition . . . ." Scott Aff., Ex. G, §16, p. 6.

Defendants assert twelve affirmative defenses and three counterclaims. At their core, the affirmative defenses and counterclaims attack the SBA's decision to discontinue the loan disbursements to defendants. Defendants' arguments can be broken down into three primary contentions: (1) the SBA acted in an arbitrary and capricious manner by reaching inconsistent conclusions about the impact of the Klamath County lawsuit, to wit, the SBA first deemed the

1 lawsuit unimportant, but later used the judgment as a basis to cancel further disbursements under
2 the loans; (2) the SBA and LPP unreasonably blocked the market value sales of the Clatskanie
3 property; and (3) the SBA did not give due consideration to defendants' requests for reinstatement.

5 Turning to defendants' first argument, when defendants first applied for the EIDL and DLB
6 loans, they disclosed the pending Klamath County lawsuit. The SBA authorized the loans, finding
7 that the pending lawsuit was "not an issue." Schofield Aff., Exs. 5, 6, 6A. During the summer of
8 1996, defendants requested that the SBA increase the EIDL authorization. The SBA approved the
9 request. In December 1996, defendants entered into a Stipulated Settlement in the Klamath County
10 litigation. The agreement did not require the entry of a judgment against defendants. Only if
11 defendants failed to pay the settlement amount by March 10, 1997 would a judgment be entered.
12 Judgment was entered and, in mid-April 1997, the SBA cut off disbursements under both the EIDL
13 and DLB loans pursuant to the loan documents. As noted above, the loan documents authorized
14 withholding of disbursements when "there has been an adverse change in Borrower's financial
15 condition," such as a judgment lien. Scott Aff., Ex. G, §§ 13, 16. Thus, although defendants
16 contend that the SBA was seemingly unconcerned by the pending lawsuit when defendants first
17 applied for the loans, the lawsuit justifiably served as a basis for discontinuing disbursements when
18 it concluded with a judgment against defendants.

19 As for defendants' second argument, in the summer of 2003, defendants sought a preliminary
20 injunction to compel LPP to agree to the sale of the Clatskanie property, which would have required
21 LPP's release of its Deeds of Trust on that property. The court denied the preliminary injunction.
22 The court reasoned at that time, and reiterates the reasoning now, that when parties to a loan
23 agreement agree to the lender's unilateral, unfettered exercise of discretion, that discretion will not
24 be disturbed absent use of arbitrary, capricious, and erroneous standards. See Uptown Heights
25 Assocs. v. Seafirst Corp., 891 P.2d 639, 644-45 (Or. 1995) (en banc) (affirming dismissal of the
26 borrower's claim of breach of the covenant of good faith and fair dealing, finding that the lender's
27 foreclosure was permitted by the loan documents). Here, the loan documents contemplated that the

SBA had a right to be paid in full. There is no requirement that the SBA consent to defendants' proposed sales, and no prohibition against the SBA's refusal to consent. Further, there is no factual indication that the loans secured would have been paid in full had the SBA agreed to the sales of the real property collateral. Accordingly, there is no basis in law or fact that the SBA or LPP should have approved one or more prospective sales of the real property collateral.

Thirdly, in the five-month period between defendants' July 1997 second request for reconsideration and the SBA's denial in November 1997, there was "ongoing correspondence" between defendants and the SBA. Defendants' Facts, ¶ 1. The majority of the correspondence involved the SBA seeking further information from defendants regarding the Gardner Company's financial condition. Defendants point to no authority for the proposition that a five-month delay, or any period of time for that matter, is an unreasonably long time to respond to a borrower's request. Indeed, the case law that defendants rely upon support the SBA: <u>Blocker v. Small Business Administration</u>, wherein the court found that a one-month delay in processing the borrower's application was not unreasonable. 916 F. Supp. 37, 42 n.3 (D.D.C. 1996). As support, the court referenced <u>Smithson v. United States</u>, 847 F.2d 791, 795 (Fed. Cir. 1988), in which the court found that a near-three-month delay in processing a loan application was not unreasonable. Based on these facts, defendants' charge of undue delay in responding to defendants' second request for reinstatement is without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Summary Judgment (docket No. 63) is GRANTED.

DATED this _3rd_ day of June, 2005.

                                                  /s/ Donald C. Ashmanskas
                                                  DONALD C. ASHMANSKAS
                                                  United States Magistrate Judge